[L. A. No. 6901. In Bank.—March 2, 1922.]

In the Matter of the Estate of DAVID S. JOHNSTON, etc., Deceased.

[1] WILLS—REVOCATION—PRESUMPTION.—The presumption is that a will last seen and known to have been in the possession of the decedent, and which cannot be found after his death, has been destroyed by him with the intent of revoking it.

[2] ID.—LATER WILL—REVIVAL OF FORMER WILL.—A will is revoked by a later will containing an express revoking clause, and is not revived by the revocation of the later will, unless it appears by the terms of revocation of the later will that it was the testator's intention to revive and give effect to the first will.

[3] ID.—EVIDENCE—PROOF OF REVOCATION OF FORMER BY LATER WILL —WITNESSES.—The due execution of a later will, which was either proved or presumed to have been destroyed *animo revocandi*, may be proved, so as to give effect to its revoking clause, by one witness; or, in other words, by the same amount and quality of evidence generally required and held sufficient for the proof of any fact under section 1844 of the Code of Civil Procedure.

---

2. Destruction of revoking will as working revival of will revoked, notes, 76 Am. Dec. 652; 45 Am. Rep. 327; 4 Ann. Cas. 313; 13 Ann. Cas. 245; Ann. Cas. 1913E, 120; Ann. Cas. 1916E, 718.

APPEAL from a judgment of the Superior Court of Los Angeles County. Fred H. Taft, Judge. Affirmed.

The facts are stated in the opinion of the court.

Henry E. Carter, Flint & MacKay and William A. Bowen for Appellant.

Bicksler, Smith & Parke, Marshall Stimson and Noel C. Edwards for Respondents.

THE COURT.—This is an appeal from a judgment of the superior court of the county of Los Angeles, sitting in probate, adjudging and decreeing that a certain holographic will of David S. Johnston, deceased, offered for probate on behalf of the appellant as the beneficiary thereunder, is not the last will and testament of said decedent and dismissing the petition for the probate of the same.

David S. Johnston died in the county of Los Angeles on or about the eighteenth day of November, 1919, leaving real and personal estate therein of an amount in excess of ten thousand dollars in value. He was unmarried, but left as his heirs at law a brother, Arthur Charles Johnston, and certain children of a deceased brother. Thereafter, and on or about April 9, 1919, letters of administration on the estate of said deceased were granted and issued to said Arthur Charles Johnston upon his petition therefor showing that no will of the decedent had been found. Thereafter, and on or about May 27, 1920, Margaret Matilda Mesmer filed a petition in the matter of said estate for the probate of an alleged holographic will of said decedent bearing the date of March 23, 1917, and found among the effects of said deceased on or about May 10, 1920, and in which alleged will she was named as the sole beneficiary. To this petition Arthur Charles Johnston filed a contest upon two main grounds: First, that the document for which probate was sought was not a will, and that it did not purport to transfer, will, or dispose of any of the decedent's property to any person whatever; that it was not wholly or at all in the handwriting of said decedent, and that said decedent had not subscribed his name thereto as and for his last will and testament, or as and for any testamen-

188 Cal.—22

tary or other purpose whatever or at all. Second, that said document was not the last will and testament of said decedent for the reason that said deceased did, on or about April 25, 1918, make and execute a document as and for his last will and testament in the presence of, and which was duly attested by, two witnesses, wherein and whereby he directed the disposition of his estate in accordance with the laws of the state of California, and also wherein and whereby he expressly revoked all former wills made by him.

The contestant did not offer said will for probate, relying solely upon the revocatory clause thereof as the foundation for this latter ground of objection to the probate of said purported holographic will. To this contest an answer was filed by Margaret Matilda Mesmer, wherein all of its allegations were specifically denied, and wherein the purported holographic will was again asserted to be the last will and testament of said decedent. This contest came on for hearing before the court, and considerable evidence *pro* and *con* was presented thereon, and the matter having been submitted, the court filed its findings of fact and conclusions of law. The court did not assume in these to deal with the first ground of opposition presented by Arthur Charles Johnston assailing the testamentary character or due execution of the said purported holographic will, but in its said findings dealt exclusively with the question as to whether or not the decedent made and executed the alleged later will bearing the date of April 25, 1918, and containing the clause revoking all former wills. In that behalf the court found that the decedent, being of sound and disposing mind, did on said last-named date make and sign a will, the full text of which is set forth in said findings; that said will was, on the date thereof, signed, sealed, and published as and declared by him to be his last will and testament in the presence of two witnesses, Ethel L. Lich and William T. Blakely, each residing in said county of Los Angeles, who, at his request and in his presence, and in the presence of each other, subscribed their names as witnesses thereto. The court further found that although all reasonable and possible effort had been made to find said last will and testament of said decedent bearing said date, the said document could not be found. The court further found that by said document the said decedent did ex-

pressly revoke all former wills by him made. As conclusions of law from the foregoing findings of fact the court found that the document offered for probate by said Margaret Matilda Mesmer was not the last will and testament of said decedent, and hence that the petition of said Margaret Matilda Mesmer for the probate thereof should be dismissed. Judgment was entered accordingly, and it is from such judgment that this appeal has been taken.

The question as to whether or not the alleged holographic will of the decedent is in form a valid will is discussed by respective counsel in their briefs upon this subject. The trial court made no express finding upon that subject, and we do not deem it necessary to pass upon it nor to present or discuss the form, the changes in, or the final substance or effect of said document for reasons which will hereafter appear. The sole question which requires discussion and determination herein is as to whether the evidence in the case is sufficient to sustain the finding of the trial court that the decedent, David S. Johnston, did, on the twenty-fifth day of April, 1918, make and execute the will bearing that date and containing the express revoking clause which, according to the finding of the court, was effective to work the revocation of former wills by him made.

On the threshold of this discussion there are certain preliminary matters to be considered and disposed of. First of these is the fact that the contestant of the probate of the so-called holographic will of May 23, 1917, has not offered the document purporting to be the will of April 25, 1918, for probate as the decedent's last will and testament, but has based his contest of the holographic will upon the existence and effect of the revoking clause in the later document.

The next consideration is that the uncontradicted evidence in the case shows that said later document bearing the date of April 25, 1918, and purporting to be the said decedent's last will and testament, was, when last seen or known to exist, in the possession of the decedent. The uncontradicted evidence also shows, and the court finds, "that all reasonable and possible effort has been made to find said last named will and testament . . . but that said document cannot be found." [1] From the foregoing

facts and finding, the presumption arises that the will, last seen and known to have been in the possession of the decedent and which cannot be found after his death, has been destroyed by him with the intention of revoking it. (*Estate of Sweetman,* 185 Cal. 27 [195 Pac. 918]; 14 Ency. of Evidence, 440; *Matter of Cunnion,* 201 N. Y. 123 [Ann. Cas. 1912A, 834, 94 N. E. 648]; *In re Keene's Estate,* 189 Mich. 97 [Ann. Cas. 1918E, 367, 155 N. W. 514]; *In re Miller's Will,* 49 Or. 452 [124 Am. St. Rep. 1051, 14 Ann. Cas. 277, 90 Pac. 1002]; *Van Dyke* v. *Mack,* 139 Ark. 524 [214 S. W. 23]; *Rape* v. *Cochran* (Tex. Civ. App.), 217 S. W. 250; *In re Wear's Will,* 131 App. Div. 875 [116 N. Y. Supp. 304].)

We are thus brought by the undisputed proofs in the case, by the findings of the court, and by the operation of the foregoing presumption, to the conclusion that the purported last will and testament of the decedent dated April 25, 1918, is to be treated as a document which was revoked by the decedent during his lifetime by its destruction by him *animo revocandi.* This being determined, the immediate question which is next presented is as to the effect of such revocation upon the express clause therein revoking all former wills. As to this question but little discussion is required, since it is settled by the provisions of the sections of the Civil Code relating to the matter of the revocation of wills. Section 1292 of the Civil Code provides that (1292) "except in the cases in this chapter mentioned, no written will nor any part thereof can be revoked or altered otherwise than (1) by a written will or other writing of the testator declaring such revocation or alteration, and executed with the same formalities with which a will should be executed by such testator." Section 1296 of the Civil Code provides: (1296) "A prior will is not revoked by a subsequent will unless the latter contains an express revocation or provisions wholly inconsistent with the terms of the former will." Section 1297 of the Civil Code provides: (1297) "If after making a will the testator duly makes and executes a second will, the destruction, cancellation or revocation of such second will does not revive the first will unless it appears by the terms of such revocation that it was the intention to revive and give

effect to the first will or unless after such destruction, cancellation or revocation the first will is duly republished.''

[2] This court has recently construed these sections of the Civil Code to mean that a former will is revoked by a later will containing an express revoking clause, and is not revived by the revocation of such later will unless it appears by the terms of such revocation of such later will that it was the testator's intention to revive and give effect to the first will. (*Estate of Thompson,* 185 Cal. 763 [198 Pac. 795].) We are thus brought to the precise controversy in the present case. Upon the trial of the contest herein, the contestant offered as a witness to prove the due execution of the purported will of the decedent dated April 25, 1918, one William T. Blakely, an attorney, who testified in substance that on said April 25, 1918, he had drawn, at the request of David S. Johnston, the document purporting to be his last will of said date, and that said David S. Johnston had thereupon signed, sealed, published, and declared the same to be his last will and testament in the presence of said Blakely and of one Ethel L. Lich, who, at his request and in his presence, and in the presence of each other, subscribed their names as witnesses thereto. The said witness also testified that he had retained a carbon copy of said document, from which he had later made other copies thereof, which he had sent to certain relatives of the deceased. The original carbon copy he testified that he had retained in his office for a time, but that it had been stolen out of his office, but that he was able to identify one of the copies thereof from which he was able to state the precise terms of the original document and which, upon his identification as a copy thereof, was admitted in evidence. The contestant did not, however, produce or offer as a witness Ethel L. Lich, the other subscribing witness to said document. The reason for this sufficiently appears from other evidence in the case showing that said Ethel L. Lich had no recollection of having witnessed the alleged execution of said document or of having signed her name as a subscribing witness thereto.

Upon this state of the record the question at issue arises, the appellant insisting that in order to give effect to the revoking clause in the decedent's purported will dated April 25, 1918, it was necessary to prove the due execution of said

document by two witnesses, and that this not having been done, the evidence was insufficient to justify the finding that said instrument was duly executed by the decedent as and for his last will and testament so as to give effect to its revoking clause as working the revocation of his former holographic will. **[3]** This question has, however, been recently set at rest by the decision of this court in the case of the *Estate of Thompson, supra,* for, while in that case the court was divided upon the question as to whether evidence less than that required under section 1339 of the Code of Civil Procedure for the proof of a lost or destroyed, but unrevoked, will, namely, that "of two credible witnesses," could be permitted to establish and give effect to a revoking clause in such will, the court was in agreement in holding that the due execution of a will which was either proved or presumed to have been destroyed *animo revocandi* might be proved so as to give effect to its revoking clause by one witness, or, in other words, by the same amount and quality of evidence generally required and held sufficient for the proof of any fact under section 1844 of the Code of Civil Procedure. In the prevailing opinion of the court in *Estate of Thompson, supra,* Mr. Justice Wilbur thus stated the rule: "If the will of 1916 had been revoked by cancellation or otherwise, the evidence of one witness to the contents of the will of 1916 would be sufficient to establish that it contained a revoking clause, for section 1297 of the Civil Code declares that the revocation of a revoking will does not revive the first will 'unless it appears by the terms of such revocation that it was the intention to revive or give effect to the first will.' No doubt can be entertained that where the second testamentary act is revoked, evidence of the contents of the revoked will may be considered to determine the effect of such revocation upon an earlier will still in existence." In the dissenting opinion in the same case, Mr. Justice Olney states: "The leading opinion admits that if the will containing the revocation clause is in turn revoked, the revocation is still effective, the instrument cannot be probated, and, if destroyed, two witnesses as to its contents are not required for the purpose of proving the revocation." The same learned justice cites, as supporting this rule, the case of *In re Wear's Will,* 131 App. Div. 875 [116 N. Y. Supp.

304], which interprets sections 1865 and 2621 of the New York Code of Civil Procedure (from which section 1292 et seq. of our Civil Code were taken), relating to the character of proof required to entitle a lost will to probate, as distinguished from that required to prove the existence of such later will for the purpose of giving effect to its revoking clause. This case is so nearly identical as to its facts with the case at bar that we deem the following excerpt from it profitable: ''The objection urged on this appeal from the decree of the surrogate refusing probate to the first will is that the proof offered and received of the execution of the second will is inadequate The appellant contends that the proof must be of the character required by sections 2621 and 1865 of the Code of Civil Procedure, entitling a lost will to probate. The requirement of this section is that the provisions of such lost will must be established 'by at least two credible witnesses, a correct copy or draft being equivalent to one witness.' We are of the opinion that this contention cannot be sustained. It is one thing to admit to probate a will disposing of a man's estate where the will cannot be found, and quite another thing to merely establish that a second will, revoking a former will, has been duly made and executed and left in the possession of the decedent. In the one case we are assuming to dispose of property in a manner different from that prescribed by law in the absence of a will, while in the latter case we are merely permitting the property to descend in the manner which the law designates. In the case now under consideration the execution and delivery of the will to the decedent was proved by Mr. Eckstein who drew both wills, and who was a subscribing witness in both of them. He would have been entirely competent to have proved the execution of the will, if it had been found, the remaining subscribing witness being dead; and he was equally competent to prove the execution and delivery of the will to the decedent, not for the purpose of establishing a lost will, but to show that the will offered for probate was not the last will and testament of the decedent, and that such an instrument was executed and left in such a custody that the presumption is that it was destroyed with the intention of revocation, with the result that the decedent died intestate. We are of opinion that the authorities relied upon by the

learned surrogate support his conclusion, and that the decree refusing probate to the will of June, 1900, was properly made.''

From the foregoing discussion we conclude that the evidence of the witness Blakely was sufficient, if believed by the trial court, to establish the fact as found by it that the will of the decedent dated April 25, 1918, had been duly executed by him so as to render effective its revoking clause to the extent of revoking all former wills by him made, and that said revoking clause remained in full force and effect as to former wills of the decedent although said later will had been presumptively destroyed by the testator with the intention of revoking same. This conclusion renders unnecessary any further discussion as to the form, substance, or effect of the prior holographic will of the decedent, which the trial court by its judgment rightly held to have been revoked and hence properly denied admission to probate.

Judgment affirmed.

Richards, J., *pro tem.*, Shaw, C. J., Wilbur, J., Lawlor, J., Shurtleff, J., Sloane, J., and Waste, J., concurred.